UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PRESTON TUCKER, | ) | CASE NO: 1:13-CV-1260 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | NANCY A. VECCHIARELLI |
| U.S. BANK, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **Report and Recommendation** |
| | ) | **(Doc. Nos. 12, 21, 30, 32, 34)** |

This case is before the United States Magistrate Judge on referral for general pretrial supervision, including the preparation of reports and recommendations for the disposition of case dispositive motions.  (Doc. No. 8.)  Plaintiff Preston Tucker ("Plaintiff" or "Tucker") is *pro se* and incarcerated.  This case arises out of Plaintiff's claims that Defendants, U.S. Bank, N.A. ("U.S. Bank"), Attorney Ted Humbert ("Humbert"), and Bank of America, N.A. ("BANA"), violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*. ("FDCPA"), and the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"), with respect to a note and mortgage on a property owned by Tucker in Maple Heights.  Currently pending before the Court are: (1) motions for judgment on the pleadings filed by all Defendants (doc. nos. 12, 30, 32); and (2) Tucker's "motion to rebut defendant's answers and objects to dismissal" ("Motion to Rebut") (doc. no. 21), and "reply to brief and motion for summary judgment" ("Reply/MSJ") (doc. no. 34).  For the reasons set forth below, the United States magistrate judge recommends that this Court: (1) GRANT the motions for

judgment on the pleadings (doc. nos. 12, 30, 32); (2) construe Tucker's Motion to Rebut

(doc. no. 21) as his opposition to Humbert's motion for judgment on the pleadings,

rather than as a motion seeking relief; and (3) DENY Tucker's Reply/MSJ to the extent

it seeks summary judgment on his claims against Defendants.

## I. Background and Procedural History

In May 2013, Tucker filed a Complaint alleging violations of the FDCPA (Count

One) and the RESPA (Count Two), and seeking to quiet title on property located in

Maple Heights, Ohio (Count Four).  (Doc. No. 1.)[1]  He alleged the following relevant

facts:

> 9.　On August 2, 2006, [Plaintiff] signed a Note with Countrywide Home Loans in the amount of $87,200 and secured by an interest in Real Property located at 5115 Stanley Avenue, Maple Heights, Ohio.
>
> 10.　At the same place and time, [Plaintiff] and Countrywide Home Loans, Inc., also entered into a mortgage, recorded in the Land Records of Cuyahoga County, Ohio, to create a security interest for the Note.
>
> 11.　The Mortgage named Mortgage Electronic Registration Systems, Inc., ("MYERS") as the "Mortgagee" under the mortgage.
>
> 12.　On August 29, 2011, MYERS allegedly assigned their interest in the Mortgage to [U.S. Bank] as the Trustee for the holders of the SASCO 2006-BC4 Trust Fund.

---

[1] Tucker's Complaint also contained a claim for mail fraud (Count Three).  (Doc. No. 1.)  In June 2013, this Court, pursuant to 28 U.S.C. § 1915, dismissed the mail fraud claim.  (Doc. No. 6.)

13.     The Note was not assigned and continue [*sic*] to be held by [BANA], who had purchased Countrywide Home Loans, Inc.

14.     Following the alleged assignment of the Mortgage, [BANA] continued to service said Note and offered to renegotiate the terms of said Note, including entering into a new security interest.  At no point did [BANA] indicate that their authority to do so rested with a third party.

\*   \*   \*

17.     Defendant [U.S. Bank], through its various agents, has filed two separate legal actions against the Plaintiff seeking to foreclose the Plaintiff's property, both of these actions were ultimately dismissed[.]

18.     Defendants [U.S. Bank] and [Humbert] have sent various items to the Plaintiff with the specific intent of defrauding him.

(Doc. No. 1 at ¶¶ 9-18.)

In Count One of the Complaint, Tucker alleges that, in August 2012, Humbert violated the FDCPA by sending correspondence to Plaintiff's then-spouse, Tatiana Cotton, which "disclosed personal information regarding the Plaintiff to a third party without his expressed consent," in violation of 15 U.S.C. § 1692c(b).  (Doc. No. 1 at ¶¶19-23.)  Tucker also alleges that "Defendants persisted in litigating a lawsuit filed on July 23, 2012 in Cuyahoga County, Ohio, where Mrs. Cotton was named as a 'Jane Doe' Defendant in the pleadings, further disclosing third party information to her."  (*Id*. at ¶ 25.)  Plaintiff requests $1,000 in statutory damages and "$87,200 in actual damages due to the emotional distress caused by the violation" of the FDCPA.  (*Id*. at ¶

27.)

In Count Two of the Complaint, Plaintiff alleges that BANA and U.S. Bank

violated the RESPA by failing to notify him that his mortgage loan had been transferred

between servicers.  (Doc. No. 1 at ¶ 31.)  Specifically, Plaintiff states:

> 31.    12 U.S.C. § 2605(b)(2)(A) requires a Notice, at least
>        15 days in advance to the Borrower, before a
>        mortgage loan is transferred between servicers.  12
>        U.S.C. § 2605(c)(2)(A) requires a new loan servicer to
>        make the same Notice to the Borrower.
>
> 32.    No such notice was given to Plaintiff, in violation of
>        the law.
>
> 33.    Defendant [U.S. Bank] now claims that they are
>        servicing the loan.
>
> 34.    Defendant [BANA] also claims to be servicing the
>        loan.
>
> 35.    Plaintiff does not know who is legally entitled to
>        payment on the Note, despite requests for
>        clarification.
>
> 36.    12 U.S.C. § 2605(k)(1)(E) requires a Servicer to
>        provide the Borrower with the identity of the Owner or
>        Assignee of the loan within 10 days of any such
>        request.  No such notification has been provided to
>        the Plaintiff.

(Doc. No. 1 at ¶¶ 31-36.)  Tucker alleges that he has suffered damage to his credit

rating and personal reputation as a result of the violations of the RESPA, and requests

$1,000 in statutory damages and $87,200 in "actual damages."  (*Id*. at ¶ 39.)

In Count Four of the Complaint, Tucker alleges that, "[a]s a result of the

conflicting claims set forth in the Note, the Mortgage, the assignment of the Mortgage;

the Defendants' Complaint for foreclosure and[] verbal rhetoric from the Defendants to the Plaintiff, it is impossible to discern who, if anyone, is the true holder of the Note and the Mortgage on the Real Property.  (Doc. No. 1 at ¶ 54.Tucker requests that this Court render a declaratory judgment regarding "the true and correct legal owner of the Note and Mortgage to 5115 Stanley Avenue, Maple Heights, Ohio."  (*Id*. at ¶ 56.)

In April 2014, Humbert filed his Answer to the Complaint, in which denied the allegations and stated that the correspondence he sent to Cotton was a Summons and Amended Complaint in foreclosure.  (Doc. No. 11 at ¶ 20.)  Humbert attached the Summons and Amended Complaint to his Answer.  (Doc. No. 11 at Exs. A and B, Doc. Nos. 11-1, 11-2.)

In May 2014, BANA filed its Answer to the Complaint. ( Doc. No. 26.)  In the Answer, BANA denied being the servicer of Plaintiff's loan.  (*Id*. at ¶ 34.)  In support of its Answer, BANA attached copies of: (1) a February 8, 2011 notice sent by BANA to Tucker at the Stanley Avenue address informing him that, effective July 1, 2011, the servicing of his loan would transfer from BAC Home Loans Servicing, LP to BANA; and (2) a November 27, 2012 notice sent by BANA to Tucker at the Stanley Avenue address informing him that, effective December 16, 2012, the new servicer of his loan would be Select Portfolio Servicing, Inc.  (*Id*. at Ex. A, Doc. No. 26-1.)  Thereafter, U.S. Bank filed its Answer to the Complaint, in which it denied Plaintiff's allegations.

In April and June 2014, Defendants filed motions for judgment on the pleadings. (Doc. Nos. 12, 30 and 32.)  Plaintiff filed replies in opposition to the motions.  (Doc.

Nos. 21, 34, 38.)[2]  At the case management conference in this matter, the undersigned

informed the parties that, to the extent the motions referred to matters outside the

pleadings, the undersigned would: convert the motions to one seeking summary

judgment; consider authenticated documents outside of the pleadings; and permit any

party to file admissible evidence.[3]  (Doc. No. 33.)  Thereafter, Plaintiff filed a "reply to

brief and motion for summary judgment."  (Doc. No. 34.)

## II. Motion for Judgment on the Pleadings

In reviewing a motion for judgment on the pleadings, a court "must construe the

complaint in the light most favorable to the plaintiff, accept all of the complaint's factual

allegations as true, and determine whether the plaintiff undoubtedly can prove no set of

facts in support of his claim that would entitle him to relief."  *Ziegler v. IBP Hog Market,*

*Inc.,* 249 F.3d 509, 512 (6th Cir. 2001).  The Court, however, "need not accept as true

legal conclusions or unwarranted factual inferences."  *Grindstaff v. Green,* 133 F.3d

416, 421 (6th Cir. 1998).  When evaluating a motion for judgment on the pleadings, a

court may consider the pleadings, which consist of the complaint and the answer.  Fed.

R. Civ. P. 7(a), 12(c); *see also* Charles A. Wright and Arthur R. Miller, *Federal Practice*

---

[2] Plaintiff captioned his initial reply in opposition as a "motion to rebut defendant's answers and objections to dismissal." (Doc. No. 21.)  Accordingly, the reply was docketed by the Clerk's Office as a motion.  Plaintiff does not, however, seek any affirmative relief; rather, he responds to Humbert's arguments in the motion for judgment on the pleadings.  Accordingly, this Court will construe the Motion to Rebut as a reply in opposition.

[3] No party submitted any authenticated evidence.

*and Procedure* § 1367 (3d Ed.) ("[A] Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, [and] *exhibits thereto . . . .*") (emphasis added).

## A.     Count One - FDCPA

In Count One, Tucker alleges that "Defendants" violated the FDCPA by sending correspondence to his wife, Cotton, and by filing a foreclosure suit naming her as a defendant.  As a preliminary matter, review of the Complaint reveals that it contains no allegations of specific conduct by Defendant U.S. Bank with respect to the alleged FDCPA violation.  Accordingly, to the extent Plaintiff intended to raise this claim against all Defendants, U.S. Bank is entitled to judgment on the pleadings on Count One of the Complaint on the basis that Tucker makes no specific allegations that U.S. Bank violated the FDCPA.[4]

BANA and Humbert do not dispute that Humbert sent correspondence – the summons and amended complaint, which named BANA as the plaintiff in the state court foreclosure action – to Cotton.  They argue that, because Cotton was Tucker's wife, the FDCPA did not prohibit Defendants from communicating with her regarding Tucker's debt.  This argument is well taken.

Section 1692c(b) of the FDCPA prohibits a debt collector from communicating

---

[4] Even to the extent this Court may broadly construe the allegations in Count One to allege conduct by U.S. Bank, the reasons for granting the remaining Defendants judgment on the pleadings on Count One apply with equal force to U.S. Bank.

7

with third parties in connection with the collection of a consumer's debt:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). The FDCPA, however, broadly defines "consumer" to include

"the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or

administrator." 15 U.S.C. § 1692c(d). Accordingly, communication with the individuals

listed in § 1692c(d) is not prohibited by the FDCPA. *See, e.g., Russell v. Goldman*

*Roth Acquisitions, LLC*, 847 F. Supp. 2d 994, 999 (W.D. Mich. 2012) (finding that the

debtor's spouse was a "consumer" for purposes of the FDCPA); *West v. Costen*, 558 F.

Supp. 564, 576 (W.D. Va. 1983) ("Under section 1692c(d), the consumer's spouse is

not a third party for the purpose of section 1692c(b).").

Here, there is no dispute that, at the time that Humbert sent the summons and

amended complaint to Cotton, she was Tucker's wife. Tucker concedes that, although

he and Cotton had initiated divorce proceedings at least twice prior to August 2012, at

the time that Cotton received the summons and complaint, she was still married to

Tucker. (Doc. No. 34 at 3 ("The third and final Complaint for Divorce was filed on

9/17/2013 and was granted in December of 2013 . . . .").) Tucker argues that, prior to

causing service of the summons and complaint, Humbert should have ascertained that

Tucker and Cotton were no longer living together and, thus, should have concluded that communicating with Cotton regarding Tucker's debt was prohibited.  Tucker, however, points to no legal authority requiring a debt collector to determine the status of a consumer's marriage prior to communicating with the consumer's spouse regarding a debt.

Tucker also argues that Humbert violated the FDCPA by sending Cotton the summons and complaint because Cotton was not a borrower on the note.  This fact, while apparently true, is not relevant.  The FDCPA's prohibition against communicating with third parties does not rely on whether a third party is also liable for the debt at issue.  Finally, Tucker raises numerous issues with the origination of the mortgage and whether BANA had standing to file for foreclosure against the Stanley Avenue property.  These issues are not relevant to the question whether Defendants BANA and Humbert violated the FDCPA when they served a summons and complaint on Tucker's then-spouse.  Because the FDCPA does not prohibit communication with a consumer's spouse in connection with a debt, Defendants BANA and Humbert are also entitled to judgment on the pleadings on Count One of Plaintiff's complaint.

In his "Reply to Brief and Motion for Summary Judgment," Tucker relies on the arguments described above to request summary judgment against Humbert on his FDCPA claim.  As discussed above, these arguments lack merit, and, thus, this Court should deny Tucker's request for summary judgment in this case.

**B.      Count Two - RESPA**

RESPA governs the conduct of lenders and third-party servicers in the context of home mortgage loans.  One provision of RESPA provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan," and requires that "the notice . . . shall be made to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage loan (with respect which such notice is made)." 12 U.S.C. § 2605(b)(1)-(2).  RESPA also requires a servicer to "respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan." 12 U.S.C. § 2605(k)(1)(D).[5]

Tucker argues that Defendants BANA and U.S. Bank violated the provisions of RESPA described above by failing to provide him with notice that his loan had been transferred to a different servicer.  He alleges that each bank "claims" to be servicing his mortgage loan.  (Doc. No. 1 at ¶¶ 33, 34.)

In its Answer, U.S. Bank denies that it "claims" to be servicing Tucker's loan. (Doc. No. 27 at ¶ 33.)  In its motion for judgment on the pleadings, U.S. Bank argues that Tucker does not plead sufficient facts to demonstrate that U.S. Bank is the servicer of his loan such that it had any obligation under RESPA to notify him of the transfer. This argument is well taken.  In his Complaint, Tucker alleges only that U.S Bank

---

[5] Tucker mistakenly refers to this provision as subsection (k)(1)(E) in his Complaint.

"claims" to be the servicer of his loan, an allegation that suggests that Tucker does not

agree that U.S Bank is the servicer of his loan.  He does not allege that U.S. Bank <u>is</u>

the servicer.  Nor does he allege any conduct by U.S. Bank that may create the

inference that U.S. Bank is the servicer of his loan.  Accordingly, Tucker's Complaint

alleges no basis for U.S. Bank's liability under RESPA, and U.S. Bank is entitled

judgment on the pleadings on Count Two of the Complaint.

With respect to the violation of subsection (b)(1), BANA argues that it complied

with the requirements of RESPA when, in February 2011 and November 2012, it sent

Tucker notices informing him that the servicing of his loan was transferring to a new

entity.  These notices are attached to BANA's Answer.  In response, Tucker argues that

he has been incarcerated since September 2010 and, thus, could not have received the

notices at the Stanley Avenue address.  Tucker points to no legal authority requiring

BANA to investigate the whereabouts of a borrower prior to sending the notice required

under RESPA.  Nor does he point to any authority imposing a duty to send such notice

to any address other than the property that is the subject to the mortgage.  Moreover, in

correspondence that Tucker sent to Humbert in August 2012 – attached to Humbert's

Answer – Tucker provided the Stanley Avenue address as his return address.  (Doc.

No. 11-3.)  This fact undermines Tucker's argument that sending the notices to that

address was not sufficient for him to receive them.

With respect to Tucker's claim under subsection (k)(1)(D), BANA argues that

Tucker failed to allege that he <u>requested</u> the identity, address or other contact

information listed in that subsection.  Review of the complaint reveals this to be correct.

The subsection clearly requires a servicer to respond to a "a request from a borrower"

for that information.  12 U.S.C. § 2605(k)(1)(D).  Absent any allegation that Tucker

requested the information from BANA, his claim fails.  Accordingly, BANA is entitled to

judgment as a matter of law on Count Two of the Complaint.

**C.      Count Four - Quiet Title**

In Count Four of his Complaint, Tucker requests that this Court determine who

holds the note and mortgage on the Stanley Avenue property.  (Doc. No. 1 at ¶¶ 54-57.)

Plaintiff alleges that there are "conflicting claims set forth in the Note, the Mortgage, the

assignment of the Mortgage; the Defendants' Complaint for foreclosure and[] verbal

rhetoric from the Defendants to the Plaintiff," such that he is not able to determine who

is "legally entitled to collect upon these indebitures [*sic*]." (*Id.* at ¶¶ 55.)  Defendants

argue, first, that Tucker's allegations fail to state a claim under Ohio law, and, second,

that Tucker does not allege a sufficient case or controversy to merit declaratory

judgment.  These arguments are well taken.

Under Ohio Revised Code § 5303.01, "[a]n action may be brought by a person in

possession of real property, by himself or tenant, against any such person who claims

an interest therein adverse to him, for the purpose of determining such interest."  Ohio

courts, however, have consistently determined that a consensual mortgage cannot be

removed or extinguished through a quiet title action.  *See, e.g., Bank of New York*

*Mellon Trust Co. v. Unger*, No. 97315, 2012-Ohio-1950, ¶¶ 36-37 (Ohio App. Ct. May 3,

2012) (explaining that a consensual mortgage and subsequent assignments are not a
"cloud" on title and, thus, cannot be extinguished via an action under Rev. Code
§ 5303.01).  Accordingly, to the extent Tucker asserts a claim to quiet title on the
Stanley Avenue property, Defendants are entitled to judgment on the pleadings on his
fourth count of the Complaint.

To the extent Count Four asserts a claim for declaratory judgment, Tucker has
failed to allege the case or controversy necessary for this Court to assert its jurisdiction.
The Federal Declaratory Judgment Act provides that a district court may "declare the
rights and other legal relations of any interested party seeking such declaration" in a
"case of actual controversy within" the district court's jurisdiction.  28 U.S.C. § 2201(a);
*see also Brennan v. Rhodes*, 423 F.3d 706, 707 (6th Cir, 1970) (Under the Declaratory
Judgment Act, "there still must be a case or controversy before a federal court can
assume jurisdiction and reach the merits of a case.").  The Supreme Court has
"required that the dispute be 'definite and concrete, touching the legal relations of
parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t]
of specific relief through a decree of a conclusive character, as distinguished from an
opinion advising what the law would be upon a hypothetical state of facts.'"
*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins.
Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)).  For example, in *Brennan*, the Sixth
Circuit concluded that the plaintiff's challenge to Ohio's gun control laws did not assert
an actual case or controversy because the plaintiff failed to allege "that he was in

13

danger of being prosecuted for violating the challenged [Revised Code] sections. Indeed, he has not even alleged that he owns a weapon which violates the terms of the sections or that he intends to procure one." 423 F.3d at 707.

Here, although Tucker alleges that he is unable to discern which entity is the holder of the note and mortgage on the Stanley Avenue property, he has not alleged any actual case or controversy between himself and Defendants regarding this issue. He does not allege that he has attempted to pay one Defendant, only to have that payment rejected on the basis that he paid the wrong entity.  Nor does he assert that any Defendant other than U.S. Bank has asserted a right to payment on the note, requiring him to make a double payment.  Accordingly, he has not identified any "definite and concrete" legal dispute regarding the holder of the note and mortgage, and his allegations are insufficient to merit declaratory judgment.  To the extent Count Four of the Complaint requests declaratory judgment, Defendants are entitled to judgment on the pleadings in this case.

14

### III. Conclusion

For the foregoing reasons, the magistrate judge recommends that this Court:

(1) GRANT the motions for judgment on the pleadings (doc. nos. 12, 30, 32);

(2) construe Tucker's Motion to Rebut (doc. no. 21) as his opposition to Humbert's

motion for judgment on the pleadings, rather than as a motion seeking relief; and

(3) DENY Tucker's Reply/MSJ(doc. no. 34) to the extent it seeks summary judgment on

his claims against Defendants.


s/ *Nancy A. Vecchiarelli*
UNITED STATES MAGISTRATE JUDGE

Date: August 21, 2014


### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk
of Court within fourteen (14) days after the party objecting has been served with a
copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file
objections within the specified time may waive the right to appeal the District
Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas
v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**